UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRENDA STRINGER

        Plaintiff,

     v.                           **REPORT AND RECOMMENDATION**
                                        **1:08-CV-0694 (LEK)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

        Defendant,

## I.    Introduction

Plaintiff Brenda Stringer brings this action pursuant to the Social Security Act

("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security ("Commissioner"), denying her application for disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1]  Specifically,

Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not

supported by substantial evidence and contrary to the applicable legal standards.  The

Commissioner argues that the decision was supported by substantial evidence and

made in accordance with the correct legal standards.

## II.    Background

On November 24, 2004, Plaintiff protectively filed applications for SSI and DIB,

claiming an onset date of September 1, 2004 (R. at 24, 25).[2]  Plaintiff alleges disability

due to systemic lupus erythematosus,[3] fibromyalgia,[4] depression, Von Willebrand's

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated March 13, 2009.
[2] Citations to the underlying administrative record are designated as "R."
[3] "[A] chronic, inflammatory, often febrile multisystemic disorder of connective tissue that proceeds
through remissions and relapses; . . . .  The condition is marked by a wide variety of abnormalities,

disease,[5] asthma, and bilateral knee pain.  Her applications were denied initially on

February 24, 2005 (R. at 24, 25).  Plaintiff filed a timely request for a hearing on March

31, 2005 (R. at 32).

On August 15, 2006, Plaintiff appeared before the ALJ (R. at 518).  A subsequent

hearing was held on November 14, 2006 (R. at 532).  The ALJ considered the case *de*

*novo* and on December 12, 2006, issued a decision finding Plaintiff not disabled (R. at

23).  The ALJ's decision became the Commissioner's final decision in this case when

the Appeals Council denied Plaintiff's request for review on May 5, 2008 (R. at 4-7).  On

July 1, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the

Northern District of New York on September 12, 2003, this Court will proceed as if both

parties had accompanied their briefs with a motion for judgment on the pleadings.[6]

### III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

---

including arthritis, arthralgias, nephritis, central nervous system manifestations, pleurisy, pericarditis, leucopenia, or thrombocytopenia, hemolytic anemia, an elevated erythrocyte sedimentation rate, and the presence in the blood of . . . LE cells."  *Dorland's Illustrated Medical Dictionary*, 1095 (31st ed. 2007).

[4] "[P]ain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." *Dorland's* at 711.

[5] "[A] congenital bleeding disorder . . . characterized by deficiency of von Willebrand factor, with prolonged bleeding time and often impairment of adhesion of platelets on glass beads, associated with epistaxis and increased bleeding after trauma or surgery, menorrhagia, and post-partum bleeding." *Dorland's* at 551.

[6] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."  General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

3

even if it might justifiably have reached a different result upon a *de novo* review."

Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[7] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the

---

[7] This five-step analysis is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

For the reasons that follow, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED.

### B.   Analysis

### 1.  The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff had not engaged in any substantial gainful activity as of September 1, 2004, Plaintiff's alleged onset date (R. at 17); (2) Plaintiff' systemic lupus erythematosus, fibromyalgia, depression, Von Willebrand's disease, asthma, history of knee surgery, and drug and alcohol abuse were severe impairments (R. at 17); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (R. at 19); (4) Plaintiff had the residual functional capacity ("RFC") to

> lift and carry 20 pounds on an occasional basis and 10 pounds on a frequent basis; sit, stand or walk 6 hours in an eight hour workday; perform entry-level work making simple decisions but no complex decision-making; perform low stress tasks with no planning, scheduling, report writing, supervising, or multi-tasking; with little or no change in the work environment or setting; with occasional interaction with the public; with occasional but no frequent interaction with coworkers, working in proximity with coworkers but only occasionally and coordination or conjunction with them; with no exposure to concentrated gases, fumes, odors, smoke, dust or poor ventilation; and with occasional but no frequent overhead lifting with the nondominant left arm

(R. at 19); (5) Plaintiff's allegations of her symptoms were "not entirely credible" (R. at 20); (6) Plaintiff was unable to perform any of her past relevant work (R. at 22); (7) based on the testimony of a vocational expert ("VE"), Plaintiff was capable of performing the work required of a parking lot attendant and photo machine operator (R. at 23). Ultimately, the ALJ found that Plaintiff was not disabled within the meaning of the Act at any point from September 1, 2005, through the date of his decision (R. at 23).

      2.    **Plaintiff's Claims:**

Plaintiff argues that the ALJ's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that a) the ALJ finding that Plaintiff was capable of performing light work is not supported by substantial evidence; b) the ALJ erred in finding Plaintiff did not meet the Listings; c) the ALJ's decision at step-five in determining that Plaintiff was capable of performing work in the national economy is not supported by substantial evidence.

### a)  The ALJ Erred in Failing to Fully Develop the Record

Plaintiff argues that the ALJ's finding that she retained the ability to perform light work is not supported by substantial evidence. Plaintiff's Brief, pp. 15-16.

Two physicians gave opinions as to Plaintiff's physical limitations: Dr. Wahl, the Social Security Administration ("SSA") consultative physician, and Dr. Mitkoff, one of Plaintiff's treating physician's[8] (R. at 268-272, 497-498).  However, neither of these physicians provided a functional assessment in their opinions.

---

[8] Dr. Mitkoff worked at the Albany Medical Center and the Albany Medical College (R. at 478, 495-469). Although the record is not entirely clear on the relationship between the Center and the College, it appears as though these facilities are part of the same medical institution.  Despite stating in the Assessment form that he had treated Plaintiff for five years, the Court could find evidence that Dr. Mitkoff saw Plaintiff only twice, on June 5, 2006, and November 3, 2006 (R. at 478, 495-496, 498).  However,

On January 21, 2005, Dr. Wahl diagnosed Plaintiff with asthma, arthritis or possibly Lupus by history, fibromyalgia by history, and Von Willebrand's disease by history (R. at 271).  Dr. Wahl stated the following in his medical source statement ("MSS"):

> claimant should avoid environments known to have respiratory irritants or dust.   Additionally, given her history of arthritis she may benefit from a rheumatology consultation.  She has moderate restrictions for activities that involve prolonged standing, prolonged walking, frequent stair climbing, and carrying loads of moderate or greater exertion given her history of joint disease and the possibility of exacerbating these conditions

(R. at 271).

On November 3, 2006, Dr. Mitkoff completed a form entitled "Medical Examination for Employability Assessment, Disability, Screening, and Alcoholism/Drug Addiction Determination" (R. at 497).  In that form, Dr. Mitkoff found no evidence of limitations for the following of Plaintiff's exertional capabilities: sitting, seeing, hearing, and speaking.  Id.  Dr. Mitkoff opined that Plaintiff was moderately limited in her ability to stand and use her hands.  Id.  Finally, Dr. Mitkoff found that Plaintiff was very limited in her ability to walk, lift, carry, push, pull, bend, and climb.  Id.  The ALJ afforded Dr. Mitkoff's opinions no weight.  Plaintiff does not argue that this was error.

The record is completely devoid of a function-by-function analysis from any of Plaintiff's treating physicians as well as any physicians or analysts employed by the SSA.  It is therefore unclear how the ALJ arrived at Plaintiff's exertional limitations in his

---

Plaintiff was treated extensively at the Center and College.  See (R. at 296-297, 347, 408, 478-484, 490). As a representative of that facility, Dr. Mitkoff's opinions are entitled to treating physician status, even if, acting alone, he might not be deemed a treating physician.  See Sokol v. Astrue, 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (quoting Schisler v. Sullivan, 3 F.3d 563, 569 (2d Cir. 1993)) (internal quotations removed) ("The Second Circuit has defined a treating source as the claimant's own physician, osteopath or psychologist (including an outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual.").

RFC determination.  In a situation such as this, the ALJ has a duty to develop the record to obtain a functional assessment.  See Derouin v. Comm'r of Soc. Sec., 2008 WL 4279503, at *7 (N.D.N.Y. Aug. 18, 2008) (remanding for development of the record when "[o]nly one physician provided a functional assessment . . . and this opinion was correctly given little weight . . . .  This left the ALJ with no other assessments on which to provide him guidance in formulating Plaintiff's RFC"); see also Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (finding that the ALJ's duty to develop the record exists regardless of whether Plaintiff has counsel or is continuing *pro se*).

The Court notes that the ALJ's RFC finding was largely consistent with Dr. Wahl's opinions.  However, "[t]he opinion of a consulting physician who examined the claimant once generally does not constitute substantial evidence on the record as a whole, particularly when contradicted by other evidence."  Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 55 (2d Cir. 1992) (quoting Thompson v. Sullivan, 957, F.2d 611, 614 (8th Cir. 1998)).  Dr. Wahl's opinion is inconsistent with the opinion of Dr. Mitkoff, one of Plaintiff's treating physicians.  Thus, the Court cannot find that Dr. Wahl's opinions, which lack a function-by-function analysis, qualify as substantial evidence to support the ALJ's RFC determination.

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to further develop the record and obtain a functional assessment of Plaintiff's physical limitations.  Also, there appears to be a question as to whether Dr. Mitkoff was completing the Assessment form as a representative of the Albany Medical Center/College, or in his own capacity as Plaintiff's treating physician.  If the latter, there

are treatment notes missing from the record.  Therefore, on remand, the ALJ must re-contact Dr. Mitkoff for clarification and to obtain any missing treatment notes.

### b) The ALJ's Analysis on Whether Plaintiff Met i) Listing 12.04 involving Affective Disorders, and ii) Listing 14.02 Involving Systemic Lupus Erythematosus:

Plaintiff argues that "the commissioner erred in failing to find that none of the claimant's 'severe' impairments, either alone or in combination, functionally equals the listings."  Plaintiff's Brief, p. 16.  However, Plaintiff does not argue what Listing she allegedly met.[9]  The ALJ considered, and ruled out, two Listings: i) 12.04, affective disorders; and ii) and 14.02, systemic lupus erythematosus. Without adequate guidance from Plaintiff, the Court will proceed on the assumption that Plaintiff is arguing the ALJ's Listing findings are not supported by substantial evidence.

### i)   Listing 12.04 involving Affective Disorders:

Listing 12.04 states:

12.04: Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1.  Depressive syndrome characterized by at least four of the following:
        a.   Anhedonia or pervasive loss of interest in almost all activities; or
        b.  Appetite disturbance with change in weight; or
        c.  Sleep disturbance; or
        d.  Psychomotor agitation or retardation; or

---

[9] Plaintiff makes this argument in a heading only (R. at 16).  The argument under this heading concerns the ALJ's analysis at step five of the sequential evaluation (R. at 16-17).  Thus, Plaintiff offers no further guidance as to what Listing she claims to meet.

      e.  Decreased energy; or

      f.  Feelings of guilt or worthlessness; or

      g.  Difficulty concentrating or thinking; or

      h.  Thoughts of suicide; or

      i.  Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

      a.  Hyperactivity; or

      b.  Pressure of speech; or

      c.  Flight of ideas; or

      d.  Inflated self-esteem; or

      e.  Decreased need for sleep; or

      f.  Easy distractibility; or

      g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or

      h.  Hallucinations, delusions or paranoid thinking;
         Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
   And

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;
      Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In analyzing Listing 12.04, the ALJ

f[ound] that the claimant's impairment does not meet the requirements of
that listing. With respect to rating of the "B" criteria of the mental
impairment listings, the Administrative Law Judge finds that the claimant
has mild limitations in activities of daily living; moderate limitations in
social functioning; moderate difficulties maintaining concentration,
persistence and pace; and no episodes of deterioration or
decompensation of extended duration

(R. at 19).

The ALJ's findings are consistent with the opinions of Dr. Napal, the SSA

reviewing psychiatrist. On February 28, 2005, Dr. Napal completed a psychiatric review

technique at the request of the SSA (R. at 281-294).  Dr. Napal opined that Plaintiff had

mild restrictions of daily living activities, moderate difficulties in maintaining social

functioning, moderate difficulties in maintaining concentration, persistence, or pace, and

there was insufficient evidence to determine whether Plaintiff had experienced any

episodes of decompensation, each of extended duration (R. at 291).

Plaintiff underwent a consultative psychiatric examination with Annette Payne,

Ph.D., an SSA psychiatric examiner on January 21, 2005, (R. at 262-67), and the ALJ's

findings are also supported by her opinions as well. As for activities of daily living and

maintaining social functioning, Dr. Payne found that Plaintiff was

capable of her own self care. [Plaintiff] states she does her own shopping,
cooking, cleaning, and laundry. She manages her own finances. . . . .
[Plaintiff] states she does not drive. [She] reports she has been getting
more involved with her church. She states she is trying to get connected
with sober friends. She states she has 3 brothers, who she has not
spoken to in over a year. She states she and her sister just barely started
talking again. . . . She states she is spending her days watching TV,
listening to the radio, going to doctor appointments, and meetings

(R. at 265). Dr. Payne also found that Plaintiff was "[m]ildly impaired" in attention and concentration (R. at 264). Ultimately, Dr. Payne found that Plaintiff's "psychiatric difficulties [we]re moderately limiting. Her substance abuse is severely limiting" (R. at 265). Finally, on November 3, 2006, Dr. Mitkoff, Plaintiff's treating physician for her physical impairments, found no evidence of limitations in Plaintiff's mental functioning (R. at 497-98).

There is also no evidence that Plaintiff meets the requirements set forth in criteria one, two, or three, of Listing 12.04C. Therefore, the ALJ's finding that Plaintiff does not meet Listing 12.04 is supported by substantial evidence.

### ii)  Listing 14.02 Involving Systemic Lupus:

The current Listings went into effect on June 16, 2008.[10] Revised Medical Criteria for Evaluating Immune System Disorders, 73 Fed. Reg. 14570-01, 14570 (March 18, 2008). At the time of the ALJ's decision, December 12, 2006, Listing 14.02 required:

> 14.02 Systemic lupus erythematosus. Documented as described in 14.00B1, with:
>   A. One of the following:
>     1. Joint involvement, as described under the criteria in 1.00; or
>     2. Muscle involvement, as described under the criteria in 14.05; or
>     3. Ocular involvement, as described under the criteria in 2.00ff; or
>     4. Respiratory involvement, as described under the criteria in 3.00ff; or
>     5. Cardiovascular involvement, as described under the criteria in 4.00ff or 14.04D; or
>     6. Digestive involvement, as described under the criteria in 5.00ff; or
>     7. Renal involvement, as described under the criteria in 6.00ff; or
>     8. Hematologic involvement, as described under the criteria in 7.00ff; or
>     9. Skin involvement, as described under the criteria in 8.00ff; or

---

[10] The current version of Listing 12.04 is identical to the version that existed at the time of the ALJ's decision.

10. Neurological involvement, as described under the criteria in 11.00ff; or

11. Mental involvement, as described under the criteria in 12.00ff. Or

B. Lesser involvement of two or more organs/body systems listed in paragraph A, with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2006).

Here, in analyzing Listing 14.02, the ALJ found the following:

the claimant's medical records do not document findings meeting the requirements of [Listing 14.02], with involvement of a particular bodily system at a level of severity meeting the listing for that body system.  In this matter it appears that the claimant has questionable respiratory involvement, but her condition does not result in spirometry findings of FEV1 values lower than those listed in Table 1, or other laboratory values and/or clinical evaluations indicating pulmonary functioning at levels required by the respiratory listings.  Although the claimant has been hospitalized with pneumonia and or bronchitis on occasion, she has not been hospitalized often enough with the required treatment with intravenous or nebulized anti-microbial therapy.  Although there is some reference to kidney dysfunction as well, the claimant's impairment does not meet any of the listed requirements in section 6.00 *et seq.* for the genitourinary system

(R. at 19) (emphasis in original). The ALJ compared Plaintiff's respiratory impairment to the respiratory Listings and Plaintiff's kidney impairment to the renal Listings. Thus, it appears that the ALJ considered whether Plaintiff met Listing 14.02A. The ALJ's finding that Plaintiff failed to meet Listing 14.02A is supported by substantial evidence.

The ALJ found Plaintiff failed to meet Listing 14.02, in part, because her FEV1 values were not lower than those stated in Table I of Listing 3.02. This finding is supported by substantial evidence. At Plaintiff's internal consultative examination, she was five feet four inches tall (R. at 270). For a person of Plaintiff's height, Plaintiff's FEV1 value would need to be equal to or less than 1.25 to meet Table 1 of Listing 3.02.

13

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2006). Plaintiff's FEV1 value, at the time of the consultative examination, was 2.51 (R. at 273).

The ALJ also found that Plaintiff had not been hospitalized for pneumonia or bronchitis as frequently as necessary "with the required treatment" (R. at 19). In making this determination, it appears that the ALJ considered criteria in Listing 3.04C. At the time of the ALJ's decision, Listing 3.04C required: "[p]ersistent pulmonary infection accompanied by superimposed, recurrent, symptomatic episodes of increased bacterial infection occurring at least once every 6 months and requiring intravenous or nebulization antimicrobial therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2006). This finding is also supported by substantial evidence. The record indicates that Plaintiff visited the emergency room for pneumonia on several occasions: September 18, 2004, admitted to the hospital and discharged on September 24, 2004 (R. at 156-57); November 12, 2005, admitted to the hospital and discharged on November 15, 2005 (R. at 371); and, while unclear, possibly again on July 7, 2006, with an unknown discharge date[11] (R. at 489-90). Plaintiff was also admitted to the hospital for an exacerbation of her asthma with possible bronchitis on February 2, 2006 (R. at 391-93). Plaintiff was discharged on February 4, 2006, and prescribed antibiotics. Id. Finally, Plaintiff was at the emergency room for an exacerbation of her asthma and an upper respiratory infection on May 22, 2006, and discharged later that day (R. at 485-86). Thus, Plaintiff visited the emergency room at least once every six months between November 2005 and July 2006, for a bacterial infection. The Court found evidence that indicates that

[11] The July 7, 2006, records from the Emergency Department of the Albany Medical Center were largely illegible (R. at 490-92). A chest view from that date found "infiltration of the right upper lung which could be pneumonia" (R. at 489).

Plaintiff was placed on nebulizers only in February and May of 2006 (R. at 392, 486). Although the ALJ failed to acknowledge that Plaintiff was placed on nebulizers twice during a six month time period, the Court cannot find that this is error. According to the respiratory regulations, "[f]or asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00C (2006). Here, the record does not establish the necessary obstruction. Indeed, on April 28, 2005, Plaintiff's physician found "no evidence of asthma or respiratory tract infection" and noted that Plaintiff's "spirometry [wa]s 95% of predicted when last tested in September of 2004" (R. at 408). On March 22, 2006, Plaintiff "[wa]s stable in her asthma symptoms" (R. at 428). Thus, the ALJ's finding that Plaintiff's respiratory impairments did not meet the respiratory Listings is supported by substantial evidence.

The ALJ's finding, with regard to Plaintiff's kidney dysfunction, is also supported by substantial evidence. There is very little evidence to support a finding that Plaintiff is functionally limited by a kidney impairment. Plaintiff visited the emergency room on February 5, 2004, and was diagnosed with renal stones (R. at 172). An intravenous pyelogram, completed the same day, showed "bilaterally normally functioning kidneys" (R. at 256). The ALJ failed to find her kidney impairment to be severe, and notably, Plaintiff does not argue that this was error.

The ALJ's analysis failed to discuss whether Plaintiff met Listing 14.02B. However, the Court cannot find that this is error. To meet Listing 14.02B, the evidence must establish "significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2006).

15

Here, the record does not document evidence of all four signs and symptoms.

Specifically, the Court could not locate evidence of either fever or weight loss. Indeed,

Plaintiff was instructed by her physician to lose weight (R. at 501).

Therefore, the ALJ's finding that Plaintiff did not meet Listing 14.02 is supported

by substantial evidence. Notably, the current version of the Listings no longer directs the

ALJ to look outside Listing 14.02 to make a determination. The current version states:

> 14.02 Systemic lupus erythematosus. As described in 14.00D1. With:
> A.  Involvement of two or more organs/body systems, with:
>   1.  One of the organs/body systems involved to at least a moderate
>       level of severity; and
>   2.  At least two of the constitutional symptoms or signs (severe fatigue,
>       fever, malaise, or involuntary weight loss).
>       Or
> B.  Repeated manifestations of SLE, with at least two of the constitutional
>     symptoms or signs (severe fatigue, fever, malaise, or involuntary
>     weight loss) and one of the following at the marked level:
>   1.  Limitation of activities of daily living.
>   2.  Limitation in maintaining social functioning.
>   3.  Limitation in completing tasks in a timely manner due to
>       deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009). Significantly, and relevant to our case, to

meet Listing 14.02A or B, an individual need not establish all four constitutional

symptoms or signs as previously required. Id. Indeed, Plaintiff need only establish that

she experiences two of the four symptoms. Id. Thus, on remand, the ALJ, who rendered

his decision in this case under the old rule, should consider whether Plaintiff meets

Listing 14.02, under its current requirements.

### c) The ALJ's Step-Five Analysis Resulting in a Determination that Plaintiff was Capable of Performing Work in the National Economy is Necessarily Flawed

Plaintiff argues that the ALJ erred in finding Plaintiff capable of performing work in the national economy. Plaintiff's Brief, pp. 16-17.

Plaintiff appears to base this argument on the contention that the RFC is not supported by substantial evidence. As this Court has previously recommended remand for failure to fully develop the record, the RFC is necessarily flawed. As such, the Court cannot determine whether the ALJ's finding at step five of the sequential evaluation is supported by substantial evidence.

### 3.   The Issue of Substance Abuse:

There is ample documentation in this matter that Plaintiff's substance abuse is material to both her physical and mental limitations.  It does not appear from the ALJ decision that Plaintiff raised it as an issue in her challenges to the ALJ's decision. However, given the evidence of substance abuse in the record, and the opinion of Dr. Payne to the effect that Plaintiff's "psychiatric difficulties were moderately limiting and her substance abuse difficulties were severely limiting" (R. at 21), the ALJ on remand may have to engage in an analysis of the impact of her substance abuse on her limitations. Should that occur, the Court offers the following guidance.

The Act establishes that "an individual shall not be considered disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); Thus, "substance abuse becomes material to a benefit determination only after the claimant is found to be disabled" according to the sequential

analysis. <u>Roy v. Massanari</u>, No. 3:01-CV-306, 2002 WL 32502101, at *2 n.3 (D. Conn. June 12, 2002); <u>see</u> 20 C.F.R. § 404.1535(a).  The "plain text of the regulation" requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, "without segregating out any effects that might be due to substance use disorders." <u>Day v. Astrue</u>, No. 07-CV-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan 3, 2008) (quoting <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 695 (8th Cir.2003)); <u>see e.g.</u>, <u>Orr v. Barnhart</u>, (remanding to require the ALJ "to consider the ill effects that plaintiff's alcoholism had on her impairments and limitations" when determining the issue of disability and "only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol"). The Plaintiff bears the burden of proving that substance abuse is not a contributing factor material to the disability determination. <u>White v. Comm'r of Soc. Sec.</u>, 302 F.Supp.2d 170, 173 (W.D.N.Y. 2004).

The "key factor" in determining whether substance abuse is material is whether a Plaintiff would meet the definition of disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ will evaluate which of a Plaintiff's limitations would remain if he or she stopped using drugs or alcohol, "and then determine whether any or all of  [Plaintiff's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2). If the remaining limitations are not disabling, then drug and alcohol abuse is material, but if the remaining limitations are disabling, then drug addiction and alcoholism are not material. 20 C.F.R. § 404.1535(b)(2)(i)-(ii).

The Court notes that on remand, if the ALJ first determines that Plaintiff is disabled and assesses whether Plaintiff's drug and alcohol abuse are material, then he

must "determine which of plaintiff's mental impairments would still exist if he stopped using alcohol and . . . determine whether these limitations would be disabling." Frederick v. Barnhart, 317 F.Supp.2d 286, 293 (W.D.N.Y.2004); see e.g., Frankhauser v. Barnhart, 403 F.Supp.3d 261, 277 (W.D.N.Y. 2005) (finding the ALJ's determination that Plaintiff's limitations were "far less marked" absent drug and alcohol abuse did not adequately indicate which of Plaintiff's impairments would remain and whether such limitations were disabling).

According to an SSA Emergency Teletype, when it is not possible to separate the limitations imposed by drug and alcohol abuse from those imposed by various mental disorders, it is appropriate to find substance abuse not material. Social Security Administration, "DAA Q&A Teletype," August 30, 1996, 27-29, http://www.ssas.com/daa-q&a.htm [hereinafter Emergency Teletype]. The SSA explained that a finding that drug and alcohol use was material should only be made when the evidence established an individual would not be disabled if he stopped using substances. Id. at 27, 31. Although the Second Circuit has not addressed whether the Emergency Teletype is binding authority, two district courts within the Second Circuit have found the teletype to be persuasive authority in that it represents the sound judgment of the Agency. Frankhauser v. Barnhart, 403 F.Supp.3d 261, 274 (W.D.N.Y. 2005); Ostrowski v. Barnhart, 2003 WL 22439585, at *4 (D. Conn. Oct. 10, 2003).

## Conclusion

Based on the foregoing, it is recommended that Defendant's motion for judgment on the pleadings should be DENIED; Plaintiff's cross motion for judgment on the

pleadings should be GRANTED in part and DENIED in part and REMANDED for

reconsideration.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:        Syracuse, New York
              December 2, 2009




**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


    **ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.


    <u>**Failure to file objections within the specified time or to request an**</u>

<u>**extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:       December 2, 2009